846 So.2d 230 (2002)
Mervin SANDERS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-CA-00073-COA.
Court of Appeals of Mississippi.
June 25, 2002.
Rehearing Denied January 14, 2003.
Certiorari Denied May 15, 2003.
*232 James Lawton Robertson, Jackson, Paul McGerald Luckett, McComb, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. Mervin Sanders was convicted of possession of cocaine with the intent to sell in the Circuit Court of Pike County, Mississippi. Evidence of two prior drug convictions was introduced and Sanders was sentenced as a habitual offender to pay a $30,000 fine and to serve a term of thirty years in the custody of the Mississippi Department of Corrections. Sanders appealed his conviction to the Mississippi Supreme Court. That court affirmed the conviction and Sanders then filed a motion for post-conviction collateral relief. The Mississippi Supreme Court granted Sanders leave to file the post-conviction motion. Sanders filed a motion for summary judgment in the Pike County Circuit Court on the issues alleged in the post-conviction motion. The State filed a cross-motion for summary judgment. The circuit court granted the State's summary judgment motion and denied Sanders's.
¶ 2. Feeling aggrieved, Sanders has perfected this appeal and raises nine allegations of error. First, he argues that the circuit court erred when it refused to deem admitted the statements contained in the requests for admission Sanders filed with the State. Next, he asserts that the circuit court erred when it refused to grant him an evidentiary hearing on the issues contained in his post-conviction relief motion. Sanders further argues that the State's participation via the Mississippi Bureau of Narcotics in his prosecution was so offensive that the only appropriate remedy is to discharge him. He also argues that he was denied the right to a speedy trial as guaranteed by the United States Constitution and the Mississippi Constitution. Next, Sanders alleges that the State conducted an illegal search and seizure of the vehicle he was driving in violation of the Fourth and Fourteenth Amendments of the United States Constitution. He also argues that he was denied due process of law in that he was denied a fundamentally fair trial and that he was denied effective assistance of counsel. Finally, Sanders argues that the circuit court erred when it refused to appoint James L. Robertson as his counsel in the post-conviction relief proceedings and subsequent appeal.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. In January 1990, the Mississippi Bureau of Narcotics (MBN) began a sting operation focused on Sanders. A confidential informant, Johnny Morris, acted as the contact between the MBN and Sanders. Morris contacted Sanders and asked him to buy an ounce of cocaine for Morris. Sanders agreed and Morris supplied him with the money and transportation needed to buy the drugs. The money and the car were provided to Morris by the MBN.
¶ 5. On January 20, 1990, MBN agents attached a tracking device to the car Morris had given to Sanders. Pursuant to the plan between Sanders and Morris, Sanders drove the car into south Louisiana to purchase the drugs. MBN agents tracked Sanders until near Hammond, Louisiana. At that point, they lost contact with the car. To prevent Sanders *233 from eluding them, the agents set up stationary surveillance points along Interstate 55. At approximately 2:20 a.m., Agents Ronnie Frazier and Craig Oster spotted a car matching the description of the one Sanders was driving. A highway patrol officer working with the narcotics team stopped Sanders just north of Osyka in Pike County, Mississippi. After the vehicle was stopped, Sanders was asked to step out of the car. Agent Oster searched the passenger's side of the car. In the glove box he found a package containing one ounce of cocaine. Sanders was arrested for the crime of possession of cocaine with the intent to distribute.

LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO DEEM ADMITTED THE FACTS CONTAINED WITHIN THE REQUESTS FOR ADMISSION SANDERS FILED WITH THE STATE.
¶ 6. On or about November 16, 1999, Sanders filed and served his requests for admission on the State. Sanders stated that they were in accordance with Mississippi Rule of Civil Procedure Rule 36, "for use as evidence at the trial hereof and otherwise, but not as discovery within the meaning and contemplation of Miss.Code Ann. § 99-39-15(3)." The State did not file a response to Sanders's requests. Based on the State's failure to answer, Sanders filed a motion for summary judgment on April 19, 2000. In his motion Sanders argued that because the State did not respond to the requests, they were deemed admitted in accordance with M.R.C.P. Rule 36. The trial court refused to admit the facts contained in the requests for admission. The court ruled that because Sanders had failed to seek the court's permission before filing discovery with the State, the State was under no obligation to respond.
¶ 7. On appeal, Sanders argues that the trial court erred in failing to deem admitted the facts contained within his requests for admission because he did not file them as discovery. In support of this argument, Sanders cites to case law from other jurisdictions in which those courts held that requests for admission are not always a discovery device.
¶ 8. There is no controlling precedent from this State to support Sanders's assertion that requests for admission are not discovery and should not be treated as such. Despite Sanders's statement that he was serving the requests for admission for purposes other than discovery, the requests were discovery documents and could only be filed and served in accordance with Miss.Code Ann. § 99-39-15(3) (Rev.2000). That statute provides as follows:
(1) A party may invoke the processes of discovery available under the Mississippi Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.
(2) Request for discovery shall be accomplished by a statement of the interrogatories or requests for admission and a list of the documents, if any, sought to be produced.
Miss.Code Ann. § 99-39-15 (Rev.2000).
¶ 9. The trial judge refused to admit the facts contained within the requests because Sanders failed to obtain leave of court to file the discovery. This decision was in accordance with statute and was not an abuse of the judge's discretion.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO *234 GRANT SANDERS AN EVIDENTIARY HEARING ON THE ISSUES RAISED IN HIS PETITION FOR POST-CONVICTION RELIEF.
¶ 10. Sanders argues that the trial court erred in refusing to grant him an evidentiary hearing on the issues raised in his petition for post-conviction relief in contravention of an order from the Supreme Court granting him the right to proceed on all issues raised before the court. Sanders maintains that the Supreme Court's order determined that he had stated claims upon which relief could be granted, and, as such, the circuit court was under a duty to allow him an evidentiary hearing in which to present his claims.
¶ 11. Sanders filed his application for leave to proceed in the trial court pursuant to Miss.Code Ann. § 99-39-27 (Rev.2000). Subsection 7 of that statute prescribes that in considering an application for leave to proceed in the trial court with a motion for post-conviction relief, the court has two options at its discretion. First, the court may rule on the motion for post-conviction relief, granting or denying any or all relief requested if sufficient facts exist on the face of the application and attachments. Alternatively, the court may permit the motion to be filed in the trial court for further proceedings under sections 99-39-13 through 99-39-23. Hymes v. State, 703 So.2d 258, 260 (Miss.1997).
¶ 12. The Supreme Court granted Sanders the right to file his petition for post-conviction relief in the trial court. Thereafter, Sanders filed his petition with the Circuit Court of Pike County and filed and served his requests for admission on the State. Based on the State's failure to respond to the requests, he filed a motion for summary judgment with the circuit court. Because the State did not answer, Sanders argued that the facts contained within the requests should be deemed admitted and were sufficient to merit a summary judgment award in his favor. As previously discussed, the trial judge properly refused to admit the facts. The State filed a cross-motion for summary judgment; this motion was granted by the circuit court.
¶ 13. Mississippi Code Annotated Section 99-39-19 (Rev.2000) reads as follows:
(1) If the motion is not dismissed at a previous stage of the proceeding, the judge, after the answer is filed and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice shall require.
(2) The court may grant a motion by either party for summary judgment when it appears from the record that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.
Further, the Mississippi Supreme Court has held that "a post-conviction collateral relief petition which meets basic requirements is sufficient to mandate an evidentiary hearing unless it appears beyond a doubt that the petitioner can prove no set of facts in support of his claim which would entitle him to relief." Marshall v. State, 680 So.2d 794, 794 (Miss.1996).
¶ 14. The entirety of Sanders's motion was based upon his allegation that the facts contained within his requests for admission were conclusively admitted because the State did not respond to the requests. Sanders offered no other evidence to support his claims. In effect, Sanders's argument on appeal demands that if the trial court did not grant his *235 motion for summary judgment, it had to hold an evidentiary hearing on the issues raised in his petition. Because of the authority he places on the supreme court's orders, he maintains that the trial court did not have the authority to grant the State's motion for summary judgment.
¶ 15. This argument is in direct contravention of the controlling statutes. Miss. Code Ann. § 99-39-19(2) (Rev.2000). The supreme court's orders did not conclusively determine that Sanders was entitled to an evidentiary hearing. The orders entered by the supreme court merely granted Sanders the right to proceed with his arguments in the trial court. Once under the jurisdiction of the trial court, pursuant to Miss.Code Ann. § 99-39-19(2), that court had the authority to render an opinion with or without an evidentiary hearing. Because Sanders failed to offer any evidence in support of his claims other than the requests for admission which were properly stricken by the court, the court did not abuse its discretion in finding that Sanders had presented no material fact upon which relief could be granted.
III. WHETHER THE ACTIONS OF THE MBN WERE SO OFFENSIVE THAT SANDERS'S DISCHARGE WAS REQUIRED.
¶ 16. Sanders contends that the actions of the agents of the Mississippi Bureau of Narcotics were shocking and outrageous to such an extent that the only proper remedy is a total and complete discharge. Sanders asserts that the MBN had established a pattern and practice of forcing persons they arrested into serving as undercover confidential informants for the MBN. If these persons did not work with the agents, the MBN agents would suggest that the offender be prosecuted and sent to the penitentiary. Sanders further asserts that the bureau required these persons to remain as informants for as long as they were useful. He maintains that the bureau did not pay the informants or offer any form of protection to the informants. Sanders charges the MBN with responsibility for the deaths of three undercover informants. He offers no evidence in support of this assertion other than the statements propounded in his requests for admission. As stated earlier, these statements were properly stricken by the trial court.
¶ 17. In support of this argument, Sanders offers Moore v. State, 534 So.2d 557, 560 (Miss.1988). In Moore, the court quoted with approval the premise set forth by Justice Holmes dissenting in Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 72 L.Ed. 944 (1928), "[f]or my part I think it a less evil that some criminal should escape than that the government should play an ignoble part. What we are saying is that the State's participation can become so offensive that the only appropriate antidote is to discharge the accused." The Moore court further stated, "the defendant must be discharged where State officials engage in conduct outrageous or shocking to common sensibilities, for we are not yet ready to hold that the end of reducing drug trafficking may be cured by any means." Moore, 534 So.2d at 560. The most common situation that will lead to a successful entrapment defense occurs when the State is both the supplier and the buyer of the contraband. Id. at 558. In that instance, the court has found that the defendant was entrapped as a matter of law and the only remedy is his discharge. Id. at 559; Tanner v. State, 566 So.2d 1246, 1247 (Miss.1990).
¶ 18. In the case sub judice, Sanders is asking this Court to extend the above cited principle to cover the actions he alleges as misconduct by the MBN agents. In Moore and Tanner, the court considered situations in which the State *236 was both the supplier and the purchaser of the contraband. Moore, 534 So.2d at 558; Tanner, 566 So.2d at 1246. Sanders is not complaining of the agents' actions before he was arrested; he is arguing that after his arrest the agents should not have had the discretion to ask the defendant to work with the State as a confidential informant. Sanders maintains that this conduct is shocking and offensive because if the defendant does not agree to cooperate with the MBN, he will be prosecuted and possibly incarcerated.
¶ 19. This argument is not persuasive. Sanders was arrested because he purchased cocaine for Morris and was caught with the contraband. The purchase of illegal drugs with the intent to sell is a crime for which a person will be arrested and prosecuted in this state. Miss.Code Ann. § 41-29-139 (Rev.2001). As for the MBN's offer to allow defendants to serve as confidential informants for the bureau, this is a practice that has been ongoing for some time and obviously is acceptable because of the number of convictions. In Moore v. State, a confidential informant arranged to sell a forty pound bale of marijuana to Moore. Moore, 534 So.2d at 557-58. MBN agents were present when the sale between Moore and the confidential informant took place. Id. at 558. Moore was arrested and prosecuted. Id. The court held that this level of State involvement was not so offensive as to require Moore's discharge. Id. at 560. While the facts in the present case are somewhat different, the level of involvement by the bureau is like that in Moore.
IV. WHETHER SANDERS WAS SUBJECTED TO INVOLUNTARY SERVITUDE OR PEONAGE.
¶ 20. Sanders asserts that the actions of the MBN agents in offering not to prosecute him if he agreed to work as a confidential informant for the bureau amounts to involuntary servitude and peonage in violation of the Thirteenth Amendment to the United States Constitution and the Antipeonage Act of 1867. Sanders states that the MBN sought to coerce him into service, holding over his head the threat of legal sanction and imprisonment. In effect, Sanders is arguing that he had no choice but to agree to work as a confidential informant for the MBN; if he did not agree, then he would be prosecuted for his crimes.
¶ 21. This issue is controlled by the law set forth in Boyington v. State, 389 So.2d 485 (Miss.1980). In Boyington, the defendant argued that his employment as an undercover agent, after his arrest for selling marijuana, violated his Thirteenth Amendment rights and 42 U.S.C. § 1994 (1974), the antipeonage statute. Id. at 488. The Mississippi Supreme Court found that although the agent who approached Boyington about working as an informant promised him that he would recommend to the district attorney that Boyington be placed on probation, his decision to work as a undercover informant was freely and voluntarily made. Id.
¶ 22. The result is the same in the case before this Court. Sanders agreed to work as an informant for the MBN in order to avoid being incarcerated for the crimes with which he was charged and convicted. In his appeal brief Sanders admits that he "voluntarily agreed with the Mississippi Bureau of Narcotics to become an informant." "The criminal process, like the rest of the legal system, is replete with situations concerning difficult decisions like [Sanders] faced." Town of Newton v. Rumery, 480 U.S. 386, 393-94, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (quoting McMann v. Richardson, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "Although a defendant may have a right, even of constitutional dimensions, to follow *237 whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." Rumery, 480 U.S. at 394, 107 S.Ct. 1187 (quoting McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)).
V. WHETHER SANDERS'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
¶ 23. Sanders argues on appeal that his right to a speedy trial was violated. This issue was examined on direct appeal. The Mississippi Supreme Court found that the issue was procedurally barred because it was not raised at trial and was not raised in the brief of the appellant. Sanders first made this assertion in his reply brief on the appellate level. The trial court cannot be held in error on a legal point never presented for its consideration. Chase v. State, 645 So.2d 829, 846 (Miss.1994). We are not, thus, obligated to review this issue. Id. Nevertheless, because of the lengthy delay alleged by Sanders, we will discuss the merits of the issue.
¶ 24. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), stands as the seminal case on the issue of the Sixth Amendment right to a speedy trial. State v. Woodall, 801 So.2d 678(¶ 10) (Miss.2001). Our courts have consistently followed the approach set forth in Barker since its inception. Id. In Barker, the United States Supreme Court stated that courts should consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant" when faced with a Sixth Amendment speedy trial issue. Woodall, 801 So.2d at (¶ 10) (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182). In applying these four factors, the court instructed that they "are related factors and must be considered together with such other circumstances as may be relevant." Woodall, 801 So.2d at (¶ 10) (quoting Barker, 407 U.S. at 533, 92 S.Ct. 2182).
(A) LENGTH OF DELAY
¶ 25. Sanders was arrested on January 21, 1990. He was not indicted until October 17, 1991. Trial was held on October 31, 1991. The State admits that the more than 600 days between Sanders's arrest and trial is sufficient to trigger the Barker analysis. In Barker, the court characterized the "length of delay" factor as a "triggering mechanism," stating that the other three factors should be considered only if the trial court found a "presumptively prejudicial" period of delay. Barker, 407 U.S. at 530, 92 S.Ct. 2182. The court explained that, absent some period of excessive delay, there could be no speedy trial violation, and, therefore, no need to explore the other three factors. Id. The court, however, declined to set specific guidelines as to what would constitute a "presumptively prejudicial" delay, indicating that the decision would hinge upon the facts of each particular case. Id.
¶ 26. In setting those guidelines in Mississippi, our supreme court has held that a delay of eight months or more would constitute a "presumptively prejudicial" delay. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). However, the court has refused to dismiss cases in which the delay far exceeded that presumptive period. See Taylor v. State, 672 So.2d 1246, 1258-59 (Miss. 1996) (denying dismissal despite 1027-day delay); Hurns v. State, 616 So.2d 313, 317 (Miss.1993) (denying dismissal despite 334-day delay).
¶ 27. More than 600 days passed between Sanders's arrest and trial. A delay of this length is presumptively prejudicial. In light of this presumption, it is necessary to analyze the other three factors.
*238 (B) REASON FOR DELAY
¶ 28. In Woodall, the court noted that pursuant to Barker the burden of establishing good cause for delay is on the State. Woodall, 801 So.2d at (¶ 16). The Barker court noted that "different weights should be assigned to different reasons [for delay]," commenting that:
A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
Barker, 407 U.S. at 531, 92 S.Ct. 2182; Woodall, 801 So.2d at (¶ 14).
¶ 29. In the case sub judice, Agent Frazier testified that Sanders was initially released without bond because he expressed an intention to cooperate with the MBN and serve as an undercover agent. Later, Sanders did agree to work undercover for the MBN. It was not until Sanders stopped cooperating that he was indicted. Because Sanders voluntarily agreed to work with the State, this constitutes an excusable reason for the State's delay in bringing him to trial. Gray v. State, 728 So.2d 36(¶ 32) (Miss.1998).
(C) SANDERS'S ASSERTION OF HIS RIGHT TO A SPEEDY TRIAL
¶ 30. Our Supreme Court has stressed the importance of a defendant's request for a speedy trial. Perry v. State, 419 So.2d 194, 199 (Miss.1982). The court has held that where a defendant fails to assert his right to speedy trial, that failure must be weighed against him. Watts v. State, 733 So.2d 214, (¶ 66) (Miss.1999). In Barker, the United States Supreme Court stressed that "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. The court further stated that "failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial." Id.
¶ 31. At no time between his arrest and trial did Sanders assert his right to a speedy trial. In fact, Sanders did not bring this issue to the court's attention until he filed his reply brief in the initial appellate proceedings. As noted in Woodall, under the Barker analysis, the failure to assert this right does not waive it; however, the failure should be held against the defendant. Woodall, 801 So.2d at (¶ 23).
(D) PREJUDICE TO SANDERS
¶ 32. In Barker, the court set forth three interests the right to a speedy trial was designed to protect, "prevention of oppressive pretrial incarceration; minimization of anxiety and concern of the accused; and limitation of the possibility that the defense will be impaired." Id. at 532, 92 S.Ct. 2182. The court further stated that the most serious of the three was the last because the defendant's inability to prepare a complete defense skews the fairness of the entire justice system. Id.
¶ 33. Sanders alleges that the State conclusively admitted his prejudice due to its failure to deny the statements contained in his requests for admission. As stated earlier, this assertion is without merit. Sanders further argues that he was prejudiced by the delay because he was unable to maintain his business or find other employment. He makes no assertion that he was unable to defend himself because of the delay between his arrest and trial.
*239 ¶ 34. The court has been reluctant to order dismissal of charges on speedy trial issues where no actual prejudice has been shown. Woodall, 801 So.2d at (¶ 24). Sanders has presented the court with no evidence of his prejudice. The only "evidence" presented to this Court is his properly stricken requests for admission. While it is true that Sanders likely suffered from anxiety concerning the charges he was faced with, he has offered no evidence of particular prejudice other than that faced by every person awaiting trial for criminal actions. As such, this Court will not presume prejudice "out of the clear blue." Id. at (¶ 25) (quoting State v. Magnusen, 646 So.2d 1275, 1284 (Miss.1994)).
VI. WHETHER SANDERS WAS DENIED HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE.
¶ 35. Sanders argues that the MBN subjected him to an illegal search because Agents Oster and Frazier failed to obtain a search warrant before they searched the car he was driving the night he was arrested. This issue was raised and discussed on appellate review in Sanders v. State, 678 So.2d 663, 667-68 (Miss. 1996). Because this issue has been previously decided against Sanders, he is procedurally barred from bringing it at this time. "Rephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of res judicata." Lockett v. State, 614 So.2d 888, 893 (Miss.1992). The petitioner carries the burden of demonstrating that his claim is not procedurally barred. Miss.Code Ann. § 99-39-21(6) (Rev.2000); Cabello v. State, 524 So.2d 313, 320 (Miss.1988). However, "an alleged error should be reviewed, in spite of any procedural bar, only where the claim is so novel that it has not previously been litigated or where an appellate court has suddenly reversed itself on an issue previously thought settled." Lockett, 614 So.2d at 893 (quoting Irving v. State, 498 So.2d 305, 311 (Miss.1986)).
¶ 36. Sanders has failed to demonstrate a novel claim or a sudden reversal of law relative to this point which would exempt this claim from the procedural bar. Therefore, this issue is procedurally barred by the doctrine of res judicata pursuant to Miss.Code Ann. § 99-39-21(3) (Rev.2000).
VII. WHETHER SANDERS WAS DENIED DUE PROCESS OF LAW IN THAT HE WAS DENIED A FUNDAMENTALLY FAIR PRE-TRIAL AND TRIAL PROCESS.
¶ 37. Sanders makes a general argument that under the totality of the facts and circumstances set forth in his petition for post-conviction relief, he has been denied a fundamentally fair pre-trial and trial process. Besides this bald statement, Sanders provides no other basis for this argument other than a demand for relief pursuant to Miss.Code. Ann. § 99-39-5(1)(a)(e) and (i) (Rev.2000). As this Court has found no error in the trial court's handling of Sanders's case, this issue will not lie. Further, as far as Sanders is attempting to argue that his due process rights have been violated in relation to an alleged illegal search and/or denial of a speedy trial, these issues are procedurally barred under the doctrine of res judicata. Lockett, 614 So.2d at 893; Sanders, 678 So.2d at 667-68, 669-70.
VIII. WHETHER SANDERS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
¶ 38. Sanders argues on appeal that he was denied effective assistance of counsel at his original trial and on direct appeal of his conviction and sentence. He *240 further argues that the aforementioned orders from the Mississippi Supreme Court granting him the right to pursue post-conviction relief affirmatively hold that he was denied effective assistance of counsel in that the court rejected the State's arguments to the contrary by granting him the right to pursue "all of his issues" in trial court. As stated earlier, Sanders misinterprets the language of these orders. The orders granted him the right to pursue his allegations in trial court pursuant to Miss.Code Ann. § 99-39-27(7) (Rev. 2000), they did not rule in any way on the issues presented in Sanders's petition for post-conviction relief. Further, Sanders has failed to present this Court with any authority to support his blanket allegation that he was denied effective assistance of counsel. This Court will not consider an assignment that is unsupported by controlling authority. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Therefore, this assignment is procedurally barred.
IX. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO APPOINT MR. ROBERTSON TO REPRESENT SANDERS.
¶ 39. Sanders argues that the trial court abused its discretion when it refused to appoint Mr. Robertson to represent Sanders. He maintains that because Mr. Robertson was familiar with his case, the judge abused his discretion in appointing another attorney to prosecute his post-conviction motion.
¶ 40. While an indigent is entitled to competent counsel to defend him, he is not entitled to court appointed counsel of his own choosing. Taylor v. State, 744 So.2d 306(¶ 34) (Miss.Ct.App.1999). The current public defender for Pike County was appointed to represent Sanders. As such, Sanders was granted competent counsel. This issue is without merit.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY DISMISSING POST-CONVICTION RELIEF IS AFFIRMED. COSTS ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.