# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01259-COA

**DORIS SMITH**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:              10/06/2021
TRIAL JUDGE:                   HON. LILLIE BLACKMON SANDERS
COURT FROM WHICH APPEALED:     WILKINSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        WAYNE DOWDY
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED - 01/17/2023
MOTION FOR REHEARING FILED:

## BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.

## McDONALD, J., FOR THE COURT:

¶1.     In February 2018, Doris Smith pled guilty to second-degree murder and attempted robbery in the Wilkinson County Circuit Court. The circuit court sentenced Smith to serve forty years on the second-degree murder conviction and fifteen years on the attempted robbery conviction, all in the custody of the Mississippi Department of Corrections (MDOC). Smith's sentences were set to run concurrently. Smith filed a motion for post-conviction collateral relief (PCR) to vacate the criminal judgment against her, arguing that her pleas were involuntary. The circuit court denied Smith's PCR motion without an evidentiary hearing, and Smith now appeals. We affirm the circuit court's order denying Smith's PCR motion.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 9, 2017, a Wilkinson County grand jury indicted Smith on one count of first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2015)[1] and one count of burglary of a dwelling in violation of Mississippi Code Annotated section 97-17-23 (Rev. 2014).[2]

¶3.     On February 5, 2018, Smith filed sworn petitions to plead guilty to the lesser crimes of second-degree murder and attempted robbery.  In her petitions, Smith stated that she was entering her pleas of guilty knowingly, intelligently, and voluntarily.  She stated that she was not under the influence of alcohol, drugs, or any type of medication and that her attorney had

---

[1] Section 97-3-19(1)(a) provides:

(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder . . . .

[2] Section 97-17-23 states:

(1) Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

(2) Every person who shall be convicted of violating subsection (1) under circumstances likely to terrorize any person who is actually occupying the house at the time of the criminal invasion of the premises shall be punished by imprisonment in the custody of the Department of Corrections for not less than ten (10) years nor more than twenty-five (25) years.

fully informed her of the charges in the indictment and advised her of the possible defenses.

¶4.     Smith's plea hearing was held on the same day that she executed her sworn petitions. The circuit court questioned Smith in detail about her pleas. Smith acknowledged that she knowingly and voluntarily waived her rights. Smith stated that she desired to enter a plea of guilty to the crimes of second-degree murder and attempted robbery and that she had gone over each petition in its entirety with her attorney. Smith stated that she was not under the influence of any drugs or other intoxicants. The court also asked Smith's attorney if he saw anything that would make him believe that Smith was presently intoxicated or under the influence of any drugs or other intoxicants. Smith's attorney responded, stating "no, your honor, she's very clear thinking." Smith also stated that no one had threatened her to make her plead guilty.

¶5.     At the hearing, the State explained and presented the facts of the crimes to the court. The State stated that grand jurors had charged that on December 5, 2016, Smith broke into Isabelle Robertson's home with the felonious intent to rob her and that Smith choked, suffocated, and killed Robertson during the incident. Smith stated on the record that she understood the charges against her, that she had committed the crimes, and that she was voluntarily pleading guilty to the charges.

¶6.     When the circuit court judge asked why she was pleading guilty, Smith stated, "Because I did it, Your Honor. I can't blame drugs, or nothing. I am sorry to the family for taking their loved one. I can't bring her back, but . . . ." The judge then asked Smith to explain what she had done:

3

The Court:  Tell me what you did.

Smith:      I went to Ms. Isabelle's house, and I knocked on the door. I asked her to use her phone. She told me that she didn't have a phone. She was getting ready to close the door. I, like, forced my way in. She had started screaming. I asked her to stop screaming, she wouldn't stop screaming, and I just lost control.

. . . .

Smith:      I put my hand over her mouth, and I choked her. After she died, I put a blanket over her. I laid her in two chairs and put a blanket over her.

The Court:  Okay. You choked her to death?

Smith:      Yes, ma'am.

¶7.     At the end of the hearing, the circuit court sentenced Smith to serve forty years for the second-degree murder conviction and fifteen years for the attempted robbery conviction. Smith's sentences were set to run concurrently in the custody of the Mississippi Department of Corrections (MDOC).

¶8.     On February 1, 2021, Smith filed a PCR motion arguing that there existed evidence of material facts, not previously presented and heard, that required vacating her convictions and sentences pursuant to Mississippi Code Annotated section 99-39-5(1)(e)-(f) (Rev. 2020).[3] Smith attached to her motion Carl Cage Jr.'s officer statement,[4] Chief Jessie

---

[3] Section 99-39-5(1)(e)-(f) provides:

(1) Any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration for the period of the registration or for the first five (5) years of the registration, whichever is the shorter period, may file a motion to vacate, set aside or correct the judgment or sentence, a motion to request forensic DNA testing of biological evidence,

4

Stewart's statement,[5] Letedry Earls's statement,[6] and the Mississippi Bureau of

---

or a motion for an out-of-time appeal if the person claims:

. . . .

> (e) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
> (f) That there exists biological evidence secured in relation to the investigation or prosecution attendant to the petitioner's conviction not tested, or, if previously tested, that can be subjected to additional DNA testing, that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution.

[4] In Officer Cage's statement he stated that he collected the following items at Smith's sister's home: (1) a white t-shirt with what appeared to be blood on it, wrapped in pink pajama pants with the t-shirt visible; and (2) a small pink taser with black stripes. The t-shirt was on the top of a portable cooler and the taser was found under the mattress at the foot of the bed.

[5] In Chief Stewart's incident report, he stated:

After questioning several of the people that were on the scene, suspects were gathered and brought in for questioning. Doris Smith, one of the suspects that were brought in, confessed to committing the crime by herself. She state[d] that late Sunday afternoon, she went to Mrs. Robinson's home to use the telephone. Smith stated that Mrs. Robinson said she didn't have a telephone then she shoved Mrs. Robinson out of the entranceway. She stated that Mrs. Robinson wouldn't stop screaming so she placed a trash bag over her head. Smith also stated that the initial reason for going to Mrs. Robinson's home was to rob her.

[6] The Woodville Police obtained a written statement from Letedry Earls concerning the incident. In the statement, Earls stated that he was "chilling in the bottom," and the suspect "Picklehead" told him that he and Shane went to Mrs. Robertson's house to try to rob her. "Picklehead" was outside urinating, and he heard Shanae beating Mrs. [Robertson]

Investigation's (MBI) report of the crime-scene findings.[7]  According to Smith, she was never made aware of a blue bandana that was found at the crime scene and mentioned in the crime scene investigation report.  Smith stated that this bandana belonged to Andre Thompson, who Smith alleged was the actual perpetrator of the crimes, and stated that this information was never discussed by her trial attorney with her.  Smith also stated that her guilty pleas were not freely and voluntarily entered.  Specifically, Smith argued that her pleas were induced and resulted from threats of violence, intimidation, and coercion made by Andre.

¶9.    Smith also attached affidavits from herself and several family members to her PCR motion.  In her affidavit, Smith alleged that her guilty pleas were involuntarily made and induced by fear and threats of violence made by Andre.  Smith also stated that she made her confession to law enforcement and entered into her guilty pleas while under the influence of drugs.[8]  Smith stated that she became addicted to drugs in 2015 after meeting Derlentren

up."  The record is not clear as to who "Shanae" is.

[7] The MBI report stated that "no defense wounds were noted on Robertson's hands; the hands and feet were bagged.  Due to the plastic bag and quilt the victim was not examined any further for apparent injuries."  The report further stated that when Robertson was moved, a blue bandana was noted to be in the quilt.

[8] We note that this allegation was not raised in the section of Smith's motion titled "claims or grounds upon which her motion is based."  Instead, Smith stated the following in her statement of specific facts:

> While she was being interrogated by law enforcement authorities after her arrest, Doris Smith was high on drugs.  She was high on drugs at the time she initially made a confession that she had strangled Ms. Robertson.  When she appeared in Court on February 5, 2018, entering a plea to charges of second degree murder and robbery, she was again high on drugs.

6

Thompson, Andre's brother. After abandoning her husband and children, Smith and Derlentren lived together throughout 2015 and 2016, using drugs and squatting in abandoned houses. According to Smith, she was very afraid of Derlentren and Andre. Smith stated that Derlentren beat her and that he and Andre would often discuss the various violent crimes they committed.

¶10. Smith stated that four or five days before Robertson was murdered, she, Derlentren, and other drug users were staying in a room at the Magnolia Inn. At some point during their stay, Derlentren left to go to California. He informed Smith that Andre would be coming to the motel to bring more drugs. Andre brought the drugs and Smith continued on her drug binge. Once Smith ran out of money, she told Andre that she could get a loan from Robertson to purchase more. According to Smith, she and Robertson were friends and she often did work for Robertson, such as driving her to the store or to her doctor appointments. Smith stated that on the day of the murder, she called Robertson and asked if she could borrow twenty dollars. Robertson agreed and Smith told her she would come to her house to pick up the money. According to Smith, she, Andre, and an unknown male drove to Robertson's home to get the money. Upon arriving, Smith walked to Robertson's door under the garage and knocked. Smith stated that as Robertson was opening her door, Andre and the unknown male pushed Smith away from the door and started hollering at Robertson "where is your money."

¶11. Robertson began screaming and Smith alleges that Andre put one of his hands over Robertson's mouth and nose, and placed his other hand around Robertson's throat. After

Robertson passed out, Smith alleges that Andre grabbed a plastic bag or two from Robertson's trash can and placed them over her head. Smith stated that the unknown man was rummaging through Robertson's home searching for money. Smith stated that while all this was transpiring, she just stood there in shock. Smith said that she thought Robertson was still alive, just unconscious. Before leaving the home, Smith placed a blanket across Robertson to keep her warm. Smith stated that Andre told her that if she ever told anyone what he had done "your kids will die that day. I will kill your kids that day."

¶12. Smith further stated that when the police arrested her and she confessed to killing Robertson she was tired and high on drugs. She also stated that on the day of the plea hearing, she had been out on bond and had spent the night before getting high. "I do not remember much about going to court because I was high on drugs." Smith also alleges in her affidavit that Andre was in the courtroom when she entered her guilty pleas:

> I remember clearly seeing Andre in the courtroom that morning. He was staring at me, and made me afraid. He sat there the whole time I was before the Judge, answering her questions. He did not leave the courtroom until I had left the courtroom. I was frightened because Andre was there in the courtroom with me.

¶13. There was an affidavit from Smith's husband, Douglas Boyd, attached to Smith's PCR motion. Boyd stated that he and Smith married in 2008 and had a very good marriage until 2015 when Smith's mother died and she met Derlentren. According to Boyd, Smith's "bad behavior" started when she met Derlentren.

> She started heavy drug usage, using cocaine and crystal meth, I noticed in 2015 that she began taking things from our home, such as guns, music amplifiers, jewelry, and anything she could take from the home and sell for money. I learned that she was stealing and selling stuff from our home in order to get

8

money for serious drugs. As I have stated, she ignored, neglected and abandoned our children totally. She acted as if she had no children.

Boyd further stated that "while Doris (Smith) was with Derlentren, I saw her many, many times after Derlentren had beat her up, causing her to have numerous black eyes, bruising about her face, bleeding in the nose, busted and bleeding lips." Boyd stated that he spoke with Smith's attorney and he informed Boyd that Smith was in very serious trouble and that she probably faced the death penalty if convicted of the charges against her. According to Boyd, he saw Smith the day before she entered her guilty pleas and she was "very high on drugs." Boyd stated that a few days after she was sentenced Smith called him and said that "she was afraid those boys (Derlentren and Andre) would do something to harm her children." Boyd also stated that Smith had to be drunk or high on drugs when she signed the plea documents because the signatures on the documents did not look like Smith's signature as he knew it.

¶14. An affidavit from Smith's sister, Emmer Thompson, was also attached. Thompson stated that she had never seen Smith hit or hurt any person. "I never saw her act violently towards any person." Thompson stated that Smith loved Robertson and Smith did many things to help Robertson around her house, like carrying Robertson to stores and other places. Thompson stated that she attended court the day that Smith was sentenced. According to Thompson, Smith was very high on drugs at the time. "She had a blank look on her face. She did not talk or express herself." It should be noted that Thompson's affidavit makes no mention of Andre being in the courtroom on the day of Smith's plea hearing.

¶15. There was also an affidavit from Smith's father, Gregory Walker, attached to the

9

motion. Walker stated that the day before Smith was to appear in court, he drove to Woodville to be with her. "We went out, drank, smoked weed, and were shooting pool." According to Walker, he and other family members informed Smith's attorney that she had consumed drugs and asked "whether it was acceptable for Doris to be in court, since she had drugs" the night before. Walker stated that the attorney told him that they were not supposed to talk about Smith being on drugs, or having consumed drugs. Walker's affidavit also failed to mention that Andre was at the plea hearing.

¶16. The circuit court summarily denied Smith's PCR motion on October 6, 2021. In its order, the court first noted that Smith's motion failed to include a certificate of service or any other evidence that the Attorney General for the State of Mississippi had been served a copy of the motion or provided any form of notice of the motion as required by section 99-39-9(5).[9] Thus, the court held that Smith had failed to join a necessary party pursuant to Rule 12(b)(7) and Rule 19 of the Mississippi Rules of Civil Procedure.

¶17. Despite Smith's failure to provide a certificate of service evidencing notice of her motion to the State, the circuit court considered the motion holding that Smith's claim of the existence of any material fact not previously presented was frivolous and lacked merit. The circuit court stated that in the section titled "statement of the claims or grounds upon which the motion is based" of Smith's motion, Smith failed to allude to, allege, or raise the existence of any material fact not previously presented. The court further stated that the transcript of Smith's plea hearing clearly indicated that the court ascertained all necessary

---

[9] This section states that "[t]he petitioner shall deliver or serve a copy of the motion, together with notice of its filing on the state." Miss. Code Ann. § 99-39-9(5).

facts and information required for a guilty plea. The court also stated that Smith failed to specifically allege that the documents submitted as exhibits contained material facts not previously presented. The court noted that even if it were to assume that the documents did contain material facts not previously presented, such a claim would be moot because Smith pled guilty and thus waived her right to confront the authors of the documents and the documents themselves.

¶18. Concerning the involuntariness of her guilty pleas, the circuit court held that Smith presented no evidence, other than her own self-serving affidavit, related to her claims that Andre threatened violence against her or her children. The court held that because Smith failed to provide sufficient evidence that her plea was not freely given and was involuntary, this issue was also frivolous and lacked merit.

¶19. The court noted that although all the affidavits attached to Smith's motion raised allegations that Smith was under the influence of drugs at the time of the plea hearing, "no where in the Motion does Smith allege that her plea was involuntary due to intoxication, thus the allegation of Smith's intoxication at her plea hearing is moot and lacks merit." The court further stated that the allegations were in direct contradiction to the testimony elicited from Smith at the hearing. Thus, the circuit court denied Smith's PCR motion without an evidentiary hearing.

¶20. Smith now appeals arguing that the circuit court committed error when it denied her PCR motion and specifically committed error by not holding an evidentiary hearing at which she could present evidence that Andre murdered Robertson.

11

## STANDARD OF REVIEW

¶21.    "Unless a circuit court's decision was clearly erroneous or an abuse of discretion, the circuit court's denial or dismissal of a PCR motion will not be reversed." *Crockett v. State*, 334 So. 3d 1232, 1237 (¶13) (Miss. Ct. App. 2022).  When questions of law are raised, they are reviewed under the de novo standard of review. *Id*.

## DISCUSSION

### I.    Whether Smith's guilty pleas were knowingly, intelligently, and voluntarily given.

¶22.    Smith argues that in her PCR motion she met her burden to prove that her pleas in the circuit court were not knowingly, intelligently, and voluntarily given.  The Mississippi Supreme Court has held that "[a] plea is binding only if it is entered into voluntarily." *Hamberlin v. State*, 995 So. 2d 142, 144 (¶7) (Miss. Ct. App. 2008) (quoting *Robinson v. State*, 964 So. 2d 609, 612 (¶7) (Miss. Ct. App. 2007)).  A defendant's guilty plea will be deemed involuntary "if induced by fear, violence, deception, or improper inducements." *Id*.

### A.    Coercion and Threats

¶23.    Smith first asserts that she was coerced and threatened by Andre into giving her guilty pleas and that a PCR hearing would have allowed her "to fully present her position."  However, Smith's assertion directly contradicts her sworn statements to the circuit court during her plea hearing.  In her sworn petitions and statements to the court at the plea hearing, Smith stated that she was knowingly, intelligently, understandingly, freely, and voluntarily entering into her pleas of guilty.  Smith also explicitly stated that no one had threatened her to make her plead guilty.

12

¶24. This Court and the Mississippi Supreme Court have held that a defendant's PCR motion that "meets basic requirements is sufficient to mandate an evidentiary hearing *unless* it appears beyond a doubt that the [movant] can prove no set facts in support of his claim which would entitle him to relief." *Sanders v. State*, 846 So. 2d 230, 234 (¶13) (Miss. Ct. App. 2002) (emphasis added) (quoting *Marshall v. State*, 680 So. 2d 794, 794 (Miss. 1996)).

¶25. We also have held "that a PCR movant may not rely solely on his own self-serving affidavit or otherwise unsupported allegations in his brief." *McCray v. State*, 107 So. 3d 1042, 1046 (¶15) (Miss. Ct. App. 2012) (citing *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995)). In that case, McCray (the defendant) pled guilty to manslaughter and robbery as a habitual offender in the Wilkinson County Circuit Court. *Id*. McCray then filed a PCR motion claiming ineffective assistance of counsel and contended that his indictment was defective. *Id*. at 1044 (¶2). The circuit court dismissed McCray's motion without conducting an evidentiary hearing, and he appealed. *Id*. On appeal, this Court stated that McCray's claim of ineffective assistance of counsel was "supported in the record only by an affidavit executed by McCray himself." *Id*. at 1045 (¶11). In addition, we noted that McCray's claims on appeal directly contradicted his own sworn statements from his plea petition and those made at the plea hearing. *Id*. at (¶13). The Court further stated that "where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, . . . a transcript or written statements of the affiant to the contrary[,] to the extent that the court can conclude that the affidavit is a sham no hearing is required." *Id*. at 1046 (¶15). Thus, the Court affirmed the circuit court's denial of McCray's PCR motion. *Id*. at (¶17).

13

¶26.    As in *McCray*, in the present case, Smith's self-serving affidavit is the only evidence she presented to support her allegation that Andre coerced and threatened her into pleading guilty.  None of the affidavits from Smith's family members alleged that Smith had been coerced by Andre into entering her guilty pleas.  In addition, both Thompson and Walker attended Smith's plea hearing; however, neither of their affidavits mentions seeing Andre at the hearing as Smith alleges.  Therefore, we find that the circuit court did not err in holding that this issue lacked merit.

*B.    Intoxication*

¶27.    Smith also indirectly alleges that her pleas were involuntary due to her being under the influence of drugs at the plea hearing.  However, in her PCR motion, Smith never argued intoxication as a claim or ground upon which her motion was based.  Nevertheless, because Smith alluded to the claim within her statement of specific facts and Smith's affidavit along with the affidavits from Boyd, Thompson, and Walker raised allegations that Smith was high on drugs at the time of the plea hearing, the circuit court addressed the issue in its order.  The circuit court stated that the allegations of Smith's intoxication were in direct contradiction to the testimony elicited from Smith at the hearing.  The court further stated that nowhere in the motion did Smith allege that her plea was involuntary due to intoxication; thus, the circuit court held that the issue was moot or lacked merit.  We agree there is no merit.

¶28.    Smith argues that at an evidentiary hearing, she would have been able to present comparisons of her signature on documents signed by her when she was not stoned on drugs versus the signatures on her plea documents.  Smith argues that a comparison of the

14

signatures would have shown that she was intoxicated at the plea hearing. Smith also contends that her husband's affidavit attested to the fact that the signatures on the plea documents did not resemble Smith's signature that he often observed on documents that she had signed during their marriage.

¶29. Smith's allegation that she was intoxicated during the plea hearing not only contradicts her sworn statements at the hearing but also contradicts her attorney's direct statements to the circuit court. At the hearing, Smith's attorney stated that Smith was "very clear thinking" and that nothing gave him the impression that Smith was under the influence of any drugs or alcohol. Although Smith provided affidavits from her sister and father that stated she was high while at the hearing, as we stated above "where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, . . . a transcript or written statements of the affiant to the contrary[,] to the extent that the court can conclude that the affidavit is a sham no hearing is required." *McCray*, 107 So. 3d at 1046 (¶15). Therefore, we find no merit to this issue.

> **II. Whether the circuit court erred in denying Smith's PCR motion without conducting an evidentiary hearing.**

¶30. "A trial court enjoys wide discretion in determining whether to grant an evidentiary hearing." *Crockett*, 334 So. 3d at 1240 (¶26) (quoting *Williams v. State*, 4 So. 3d 388, 392 (¶11) (Miss. Ct. App. 2009)). In accordance with Mississippi Code Annotated section 99-39-11(2) (Rev. 2015),[10] a "circuit court may summarily dismiss a PCR motion without an

---

[10] Section 99-39-11 provides in part:

(1) If the motion is not dismissed at a previous stage of the proceeding, the

15

evidentiary hearing if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *McCray*, 107 So. 3d at 1044 (¶3). "A post-conviction claim for relief is properly dismissed without the benefit of an evidentiary hearing where it is manifestly without merit." *Crockett*, 334 So. 3d at 1240 (¶26) (quoting *Holland v. State*, 956 So. 2d 322, 326 (¶7) (Miss. Ct. App. 2007)).

¶31.    Smith argues that the circuit court committed error not only when it denied her PCR motion on the merits but also when the court failed to grant her an evidentiary hearing to present evidence that Andre murdered Robertson. Specifically, Smith wanted to present evidence that Andre was in Robertson's home on the day of the murder. Smith pointed to the MBI report, which stated that there was a blue bandana found in the quilt Robertson was wrapped in. According to Smith, at the evidentiary hearing she would have testified that Andre was wearing such a bandana on the day of the murder, thus inferring that the blue bandana found belonged to Andre. This Court has held that "[t]o be entitled to an evidentiary hearing, a defendant must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact that, if concluded favorable to the defendant, would warrant relief." *Huggins v. State*, 291 So. 3d 401, 405 (¶12) (Miss. Ct. App. 2020). "This may not be accomplished through the defendant's own unsupported allegations." *Id*.

judge, after the answer is filed and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice shall require.

(2) The court may grant a motion by either party for summary judgment when it appears from the record that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

¶32.    Again, the only relevant evidence that Smith presents is her self-serving affidavit in which she alleges that Andre is the one who actually killed Robertson.  Smith argues that had the circuit court granted her an evidentiary hearing, she would have been able to present evidence that Andre was in Robertson's home on the day of the murder.  Smith points to the MBI's report of crime scene findings, in which investigators noted that when Robertson was moved, a blue bandana was found in the quilt that covered her.  According to Smith, at a hearing, she could have identified that the blue bandana was worn by Andre at the time he murdered Robertson.

¶33.    However, as the circuit court held, Smith waived her right to a trial and her right to confront the MBI report and its author when she voluntarily pled guilty.  This evidence of the blue bandana was (or should have been) available to Smith and her attorney prior to her entering her guilty pleas.  Thus, we agree with the circuit court in its finding that Smith's motion failed to allude to, allege, or raise the existence of any material fact that was not previously available to be presented.

### CONCLUSION

¶34.    Finding no error in the circuit court's denial of Smith's PCR motion, we affirm.

¶35.    **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

17