# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01170-SCT

*BRIAN ANTHONY YOUNG*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2002 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. SHADDOCK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/20/2005 |
| MOTION FOR REHEARING FILED: | 06/08/2004 |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.   The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.     In this direct appeal from the Jackson County Circuit Court, we consider whether the trial court erred in finding Brian Anthony Young guilty of murder and sentencing him to life in prison.  Finding no reversible error, we affirm.

## FACTS

¶3.    Michael Coleman and his wife, Lelie Coleman, were living at the Budget Inn in Pascagoula, Mississippi.    According to the testimony of hotel manager Leroy Hyatt, Lelie returned to the Budget Inn at approximately 5:00 a.m. on July 1, 2000.    Shortly thereafter, around 7:00 a.m., Hyatt saw Michael leave the hotel room he shared with his wife and begin walking to his job at West Building Supplies.    Hyatt further testified that, at approximately 7:15 a.m., he saw Brian Anthony Young arrive at the motel in a brown Cadillac, park in the rear of the motel, and go upstairs to Coleman's room.    Approximately one-half hour later, Hyatt saw Young leave in a hurry.    When Michael returned to the Budget Inn around 11:30 a.m., he found his wife dead.    Testimony at trial established that Young had been involved in an affair with Lelie Coleman.

¶4.    Young was arrested on July 5, 2000, and charged with Lelie's murder.    He was not indicted until one year later, and his trial commenced on April 2, 2002.    At the conclusion of the four-day trial, the jury found Young guilty of murder, and he was sentenced to life imprisonment.    Young raises six issues on appeal, including:    denial of speedy trial, police officer's improper opinion testimony that Young murdered Lelie, challenges to three jury instructions, and the jury's verdict was against the overwhelming weight of the evidence.

**ANALYSIS**

### I.    Speedy Trial.

¶5.    Young argues that the trial court erred in denying his motion to dismiss the charge against him due to denial of his right to a speedy trial, where the one-year delay between his arrest and his indictment was both presumptively and actually prejudicial.    A defendant's right to a speedy trial is guaranteed by the sixth and fourteenth amendments to the United States

Constitution and under Article 3, Section 26 of the Mississippi Constitution of 1890. The United States Supreme Court, in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) established the following factors to be considered in determining if the right to a speedy trial has been violated: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. When this Court addressed the question of what length of time must elapse before prejudice will be presumed, in *Smith v. State*, 550 So.2d 406, 408 (Miss. 1988), we determined that while there are some exceptions to the rule, it may generally be said that any delay of more than eight months is presumptively prejudicial. *Id.* However, the delay factor alone is not sufficient for reversal, but it requires a close examination of the remaining *Barker* factors. *DeLoach v. State*, 722 So.2d 512, 517 (Miss. 1998). The Court will uphold the trial court's decision based on substantial, credible evidence of a finding of good cause. *Folk v. State*, 576 So.2d 1243, 1247 (Miss. 1991).

¶6. Young was arrested on July 5, 2000. Charged with capital murder, he remained in jail, without bail. No mention is made in the record or the briefs that he made any attempt to obtain release, or to request a speedy trial during that time. In June 2001 Young filed a motion for bail, a petition for writ of habeas corpus and a motion to dismiss the charge for denial of his right to a speedy trial. On or about July 1, 2001, at the hearing on these motions, the State announced Young's indictment. Young's motions were then deferred by his attorney, pending a review of the indictment. Young did not pursue these motions to a ruling by the trial court. Instead, defense counsel asked the trial court for a recess so that the State could file the indictment. Young's indictment was filed on July 6, 2001.

¶7. On July 24, 2001, Young filed a motion for discovery and demand for a speedy trial, followed by an amended motion to dismiss the charge. It is unclear from the record whether a hearing was held on these motions, but, on August 19, 2001, the trial judge set bond upon the reduced charge of murder and, according to Young's brief, denied the motion to dismiss.[1] However, the trial court failed to enter an order on the original motion to dismiss or the amended motion to dismiss the charge. Young's trial commenced on April 2, 2002, nine months after his indictment.

¶8. Young now asserts that he was denied his constitutional and statutory right to a speedy trial and was presumptively and actually prejudiced by the 366 days that he was incarcerated following his arrest.

¶9. The State argues that this issue is not properly before the Court because Young failed to pursue his motion to dismiss for denial of a speedy trial, to a ruling by the trial court. The State also argues that there was no oppressive pretrial detention because Young was released on bond on August 19, 2001. Finally, the State argues that Young asked for, and was given two continuances prior to trial, one on August 10, 2001, and another on January 28, 2002.

¶10. As to the last two of the State's arguments on the speedy trial issue, those arguments apply only to the post-indictment period prior to Young's trial. We agree that because Young was released on bond shortly after his indictment there was no oppressive pretrial detention *after* Young was indicted. Further, at least part of the delay to trial, following Young's indictment, is attributable to the two continuances granted at Young's request. We find no

---

[1] Young remained out on bond through his trial.

merit to Young's denial of a speedy trial claim as to the period of time following his indictment.

### A. Length of delay

¶11. The 366 days that elapsed between Young's arrest and his indictment is subject to analysis of the denial of his fundamental constitutional right to a speedy trial. Under *Barker v. Wingo*, until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependant upon the peculiar circumstances of the case. 407 U.S. at 530-31.

### B. Reason for the delay

¶12. The record is devoid of anything relevant to this Court's review of Young's constitutional speedy trial claim, other than his motion for continuance filed in October 2001, and an unrelated order of continuance, entered at his attorney's request in January 2002, rescheduling the trial for April, 2002. Young did not pursue his demand for speedy trial, nor his motion to dismiss, to a ruling by the trial court. Because Young failed to raise this issue in his motion for a new trial, there is no trial court order to review, no findings on the record, and no response from the State as to the pre-indictment delay.

### C. Assertion of the Right

¶13. Under *Barker*, a defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. The U.S. Supreme Court emphasized that failure to assert the right will make it difficult for a defendant to prove denial of a speedy trial. *Barker*, 407 U.S. at 531-32. There is nothing in

the record or in his brief to indicate that Young made any effort to request an attorney, seek bail or demand a speedy trial prior to June 2001. This Court, in *State v. Woodall*, 801 So.2d 678, 684 (Miss. 2001), determined that a defendant's failure to demand a speedy trial between his arrest and indictment was critical to the analysis of a speedy trial issue. This Court has stressed the importance of a defendant's request for a speedy trial. *Perry v. State*, 419 So.2d 194, 199 (Miss. 1982). We have repeatedly held that a defendant's failure to assert his right to a speedy trial must be weighed against him. *Watts v. State*, 733 So.2d 214, 236 (Miss. 1999).

D.      Prejudice to the Defendant

¶14.    The *Barker* Court identified three interests protected by the right to a speedy trial that are to be considered when determining whether a defendant has been prejudiced by a delay in bringing him to trial: (1) the interest in preventing oppressive pretrial incarceration, (2) the interest in minimizing anxiety and concern of the accused, and (3) the interest in limiting the possibility that the defense will be impaired. Of these three interests, the last is the most important, and when violated, the most prejudicial to the defendant. *Barker*, 407 U.S. at 532. There is nothing to indicate that the State delayed bringing Young to trial for any prejudicial or improper reason. Likewise, there is nothing in the record to indicate any prejudice to Young by the delay. Young's motion for discovery and demand for a speedy trial, filed July 24, 2001, consists of only one sentence stating simply that he demands that the State afford him a speedy trial as mandated by constitution and statute. His second motion[2] to dismiss indictment, filed

---

[2] Neither the trial court's docket nor the record excerpts contain any mention of a first motion for dismissal, although Young's second motion references a motion for reasonable bail filed June 7, 2001, a

August 13, 2001, contains only the conclusory statement that Young "has be[sic] greatly prejudiced by his continued confinement." In his motion, Young recites the four **Barker** factors, but fails to mention any specific fact or detail which links to those factors to his case, other than that it had been "some 400 days since arrest." Interestingly, he also states that "[p]rior to indictment, it is doubtful if the Court would entertain a Motion to Dismiss for failure to speedy indict in a Capital case until sufficient time had expired, and only then, if 'extraordinary circumstances' exist." Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved. **Lambert v. State**, 574 So.2d 573, 577 (Miss. 1990) (citing **Moawad v. State**, 531 So.2d 632, 635 (Miss. 1988) and **Williams v. State**, 522 So.2d 201, 209 (Miss. 1988)). This issue is without merit.

## II.    Motion for mistrial.

¶15.    Young argues that the trial court should have granted his motion for a mistrial after detective Sheila Jenkins of the Pascagoula Police Department had testified in some detail about her investigation of several suspects, and then said "[s]o it wasn't until we made a determination of who the actual person or the perpetrator was - -." Young's attorney objected at that point, saying that the testimony invaded the province of the jury. The judge overruled the objection, and the prosecutor rephrased the question. Again there was an objection, to which the judge said "[o]verruled as to who should be charged", and said to the witness: "[y]ou made the determination, did you not?" The detective then stated: "I filed charges against Brian

petition for writ of habeas corpus filed on June 19, 2001, and a motion to dismiss filed on June 21, 2001.

7

Young on July 1, 2000, for the murder of Lelie Coleman." Asking to be heard in chambers, Young's attorney argued that Jenkins' testimony amounted to an improper opinion as to Young's guilt, and that a mistrial should be declared. Observing that "[i]n every case, the police officer makes a determination as to who to charge," the judge heard further argument that the statement was bolstering the officer "as some kind of expert" and there was a prejudicial inference that the jury should convict Young. The judge denied the motion for mistrial. This Court has held that the determination of a motion for mistrial rests solely in the discretion of the trial judge.

> The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case. Miss. Unif. Crim. R. Cir. Ct. Prac. 5.15. The trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect. *Roundtree v. State*, 568 So.2d 1173, 1178 (Miss. 1990).

*Gossett v. State*, 660 So.2d 1285, 1291 (Miss. 1995). After a thorough review of the record, we find no abuse of discretion.

### III.    Jury instructions.

¶16.    Young complains of three jury instructions given by the trial court: S-1a, instructing the jury on depraved heart murder; S-6a, instructing the jury of the meaning of deliberate design; and, S-4, instructing the jury on finding the defendant guilty of a lesser crime than murder. This Court has held the standard of review for jury instructions is as follows:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

8

*Howell v. State*, 860 So.2d 704, 761 (Miss. 2003) (quoting *Thomas v. State*, 818 So.2d 335, 349 (Miss. 2002) and *Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000)).

¶17.    Regarding instruction S-1a, Young argues that the trial court erred when it allowed a "depraved heart murder" clause to be added to the deliberate design instruction. Because the indictment was for deliberate design, Young claimed that this was akin to amending the indictment and specifically objected to it because they were not informed of it by the indictment. In *Mallett v. State*, 606 So.2d 1092, 1095 (Miss. 1992), this Court approved just such an instruction, holding that "as a matter of common sense, every murder committed with deliberate design is by definition done in the commission of an act imminently dangerous to others, evincing a depraved heart." This conclusion was based on the fact that "[t]hese two versions of murder are taken straight from the statute, Miss. Code Ann. § 97-3-19 (Supp. 1987)" and "[o]ur cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a)." *Id*. There is no error here.

¶18.    With regard to instruction S-6(a), a definitional instruction on deliberate design, Young now objects, asserting that since deliberate design was a part of S-1a, then use of S-6a served only to emphasize the issue and promote a second theory of murder. Young's objection at trial, however, was a general objection. It has long been the rule of this Court that "an objection at trial can not be enlarged in a reviewing court to embrace an omission not complained of at trial." *Brown v. State*, 682 So.2d 340, 350 (Miss. 1989). This issue is procedurally barred. Notwithstanding that bar, it also is without merit. Young asserts that S-6a gives undue prominence to the deliberate design theory, is confusing and misleading, and in summary, it is error to present a smorgasbord of conviction options against an accused. We

9

do not agree with his assertion. S-6a consists of one paragraph stating the meaning as "intent to kill, without authority of law, and not being legally justified or legally excusable" and further stating that it need not exist in the mind for any definite time, and if "it exists . . . but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of murder." We find no error in this instruction.

¶19. Instruction S-4 provided that the jury "may find the Defendant guilty of a lesser crime than Murder" and plainly stated that "[t]his provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if evidence fails to prove the original charge but does justify a verdict for the lesser crime." The trial judge found that this instruction was needed because a lesser-included instruction for manslaughter was given to the jury. Young argues that it was improper because there was no proof of manslaughter. He objected on that specific ground at trial. There was testimony from two witnesses that Young was having an affair with the victim, was "in love" with her, and "obsessed" with having her only for himself, which provides the evidentiary basis necessary here.

¶20. After reviewing the record, we conclude that the trial court did not err in giving the complained of instructions where the record shows that the trial court carefully considered the objections to those instructions and determined that the instructions were appropriate. Reading the instructions together as a whole, we conclude that this issue has no merit.

### IV. Weight of the evidence.

¶21. This Court has established a high standard of review on a claim that a jury's verdict is against the overwhelming weight of the evidence. That standard requires that all of the

10

evidence consistent with the defendant's guilt is accepted as true together with any reasonable inferences that may be drawn from that evidence. *Heidel v. State*, 587 So.2d 835, 838 (Miss. 1991); *Davis v. State*, 530 So.2d 694, 703 (Miss. 1988); *Fisher v. State*, 481 So.2d 203, 212 (Miss. 1985). Further,

> "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court abused its discretion in failing to grant a new trial." *Nicolaou v. State*, 612 So.2d 1080, 1083 (Miss. 1992). "Any factual disputes are properly resolved by the jury and do not mandate a new trial." *McNeal v. State*, 617 So.2d 999, 1009 (Miss. 1993).

*Moore v. State*, 859 So.2d 379, 385 (Miss. 2003).

¶22. Young argues that the proof in this case was weak and circumstantial and falls short of being proof beyond a reasonable doubt. He asserts that there were two other men with motives and, perhaps, opportunity to kill Lelie Coleman and that there are too many questions left unanswered. Young argues that the testimony and evidence presented by the State was subject to several different interpretations and that even the State's witness, Detective Sheila Jenkins, contradicted her own analysis of the events leading up to and following the death of Lelie Coleman.

¶23. The State asserts that the record reflects an abundance of credible, corroborated, eyewitness testimony in support of the verdict, including the DNA evidence on Young's clothing, the testimony of Don Lewis that Young confessed to killing Coleman, and the testimony of Leroy Hyatt placing Young at the motel in the time period that Coleman was killed.

¶24. We agree that there is substantial evidence in the record to support the verdict. The trial court did not abuse its discretion in denying Young's motion, and this argument is without merit.

## CONCLUSION

¶25. On the speedy trial claim, Young failed to raise this issue on his motion for a new trial, and there is no trial court order to review, no findings on the record, and no response from the State as to the pre-indictment delay. There is nothing to indicate that the State delayed bringing Young to trial for any prejudicial or improper reason. Likewise, there is nothing in the record to indicate any prejudice to Young by the delay. Furthermore, after reviewing the record, we find no abuse of discretion in the trial court's denial of Young's motion for mistrial, and we conclude that the trial court did not err in giving the complained of instructions where it appears from the record that the trial court carefully considered the objections to those instructions and determined that the instructions were appropriate. Lastly, we find that the trial court did not abuse its discretion in denying Young's motion for a new trial where there is substantial evidence in the record to support the verdict. Therefore, we affirm the trial court's judgment.

¶26. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**