ROBERTS, J., for the Court.
 

 ¶ 1. Following a four-day trial in the Jackson County Circuit Court, Brian Young was found guilty of the murder of Lelie Coleman (Lelie) and given a life sentence in the custody of the Mississippi Department of Corrections (MDOC). On appeal, the supreme court affirmed Young’s conviction in
 
 Young v. State,
 
 891 So.2d 813 (Miss.2005). The supreme court granted Young leave to proceed with his motion for post-conviction relief on January 18, 2006, and he filed his motion on July 31, 2008, in the Circuit Court of Jackson County. Finding no merit to Young’s claims of violation of his right to a speedy trial and ineffective assistance of counsel, the trial court denied relief. Aggrieved from the denial, Young appeals and raises the following issues, which we state verbatim:
 

 I. THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION FOR POST-CONVICTION RELIEF BASED UPON THE ABRIDGMENT OF HIS CONSTITUTIONAL RIGHT TO A FAST AND SPEEDY TRIAL.
 

 II. THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION FOR POST-CONVICTION RELIEF BASED UPON THE ABRIDGMENT OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 

 III.THE TRIAL COURT ERRED IN DENYING APPELLANT’S REQUEST FOR AN EVIDEN-TIARY HEARING PRIOR TO DISPOSING OF HIS POST-CONVICTION [-] RELIEF MOTION.
 

 Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. The facts set forth by the supreme court in
 
 Young,
 
 891 So.2d at 816 (¶¶ 3-4) are sufficient, and we adopt them here. They are as follows:
 

 Michael Coleman and his wife, Lelie Coleman, were living at the Budget Inn in Pascagoula, Mississippi. According to the testimony of hotel manager Leroy Hyatt, Lelie returned to the Budget Inn at approximately 5:00 a.m. on July 1, 2000. Shortly thereafter, around 7:00 a.m., Hyatt saw Michael leave the hotel room he shared with his wife and begin walking to his job at West Building Supplies. Hyatt further testified that, at approximately 7:15 a.m., he saw Brian Anthony Young arrive at the motel in a brown Cadillac, park in the rear of the motel, and go upstairs to Coleman’s room. Approximately one-half hour later, Hyatt saw Young leave in a hurry. When Michael returned to the Budget Inn around 11:30 a.m., he found his wife dead. Testimony at trial established that Young had been involved in an affair with Lelie Coleman.
 

 Young was arrested on July 5, 2000, and charged with Lelie’s murder. He was not indicted until one year later, and his trial commenced on April 2, 2002. At
 
 *1154
 
 the conclusion of the four-day trial, the jury found Young guilty of murder, and he was sentenced to life imprisonment. Young raise[d] six issues on appeal, including: denial of speedy trial, police officer’s improper opinion testimony that Young murdered Lelie, challenges to three jury instructions, and the jury’s verdict was against the overwhelming weight of the evidence.
 

 As stated, the supreme court found no reversible error and affirmed Young’s conviction and sentence of life in the custody of the MDOC. We now address Young’s appeal of the trial court’s denial of his motion for post-conviction relief.
 

 STANDARD OF REVIEW
 

 ¶ 3. When reviewing a lower court’s decision to deny a motion for post-conviction relief, we will not disturb the trial court’s factual findings unless we find them to be clearly erroneous.
 
 Bowling v. State,
 
 12 So.3d 607, 609(¶ 4) (Miss.Ct.App.2009) (citing
 
 Lambert v. State,
 
 941 So.2d 804, 807(¶ 14) (Miss.2006)). “However, where questions of law are raised, the applicable standard of review is de novo.”
 
 Id.
 

 ANALYSIS
 

 I. SPEEDY TRIAL
 

 ¶ 4. Young argues at length that his constitutional right to a speedy trial was violated when he was incarcerated for 366 days between his arrest and indictment. He further argues that his “liberty rights were materially and adversely affected” during the nine-month period between his indictment and trial. However, as noted in the circuit court judge’s order denying Young’s motion for post-conviction relief, the issue of a speedy-trial violation was addressed by the supreme court in Young’s direct appeal.
 

 ¶ 5. Given that this issue was raised on direct appeal and rejected by the supreme court following a thorough analysis, it is now procedurally barred from further consideration.
 
 Mitchell v. State,
 
 886 So.2d 704, 713(¶ 32) (Miss.2004) (citing Miss.Code Ann. § 99-39-21(3) (Rev.2006)).
 
 [1]
 
 Procedural bar notwithstanding, we briefly address the supreme court’s findings. Specifically, the supreme court found that “because Young was released on bond shortly after his indictment[,] there was no oppressive pretrial detention
 
 after
 
 Young was indicted.”
 
 Young,
 
 891 So.2d at 817(¶ 10). The court went on to analyze the merit of Young’s speedy-trial-violation claim in regard to his pre-indictment incarceration under
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and determined that Young’s speedy-trial-violation claim was without merit.
 
 Young,
 
 891 So.2d at 818-19(¶ 14). Accordingly, this issue is procedurally barred.
 

 II. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 6. Young next raises the issue of ineffective assistance of counsel. A claim of ineffective assistance of counsel is judged by the standard stated in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the
 
 Strickland
 
 standard, the inquiries are whether counsel’s performance was deficient, and if so, whether that deficient performance was prejudicial in the sense that the defendant was deprived of a fair trial.
 
 Id.
 
 at 687, 104 S.Ct. 2052. “To show prejudice, the claimant must demonstrate that, but for his attorney’s errors, there is a reasonable probability that a different result would have occurred.”
 
 Watts v.
 
 
 *1155
 

 State,
 
 981 So.2d 1034, 1039(¶ 12) (Miss.Ct.App.2008). The claimant must overcome a rebuttable presumption that counsel’s performance falls within the broad spectrum of reasonable professional assistance.
 
 Walker v. State,
 
 703 So.2d 266, 268(¶ 8) (Miss.1997) (citing
 
 Moody v. State,
 
 644 So.2d 451, 456 (Miss.1994)). Young argues that his trial counsel failed to prepare for trial and arrange for witnesses, failed to discuss a plea offer, failed to pursue a speedy-trial claim, and failed to address a third-party-confession letter. We now address his claims.
 

 A. Preparation for Trial and Decision to Call Witnesses
 

 ¶ 7. Young argues that his trial counsel failed to call Shawanda Green, whose testimony would have offered another motive for the murder of Lelie, and Jessie Leger, who would have served as a character witness for Young. Young has also provided a copy of an affidavit from another potential witness that states the witness would have “testified to Mr. Young’s good character as a loving nephew, law abiding citizen, and a person unwilling to commit a crime of murder.”
 
 [2]
 
 The affiant further stated that she was prepared to testify that Young “found [Le-lie] already stabbed up [sic].” Young’s character was not at issue, and it is likely that such hearsay statements may have proven to be of no assistance to Young. Decisions of counsel to call or not to call certain witnesses fall within the ambit of trial strategy.
 
 Michael v. State,
 
 918 So.2d 798, 805(¶ 13) (Miss.Ct.App.2005) (citing
 
 Cole v. State,
 
 666 So.2d 767, 777 (Miss.1995)). Furthermore, counsel’s decisions are presumed reasonable.
 
 Id.
 
 (citing
 
 Burns v. State,
 
 813 So.2d 668, 677(¶ 29) (Miss.2001)). Accordingly, this issue is without merit.
 

 ¶8. Young also argues to this Court that he desired to testify at his trial, but he claims that his trial counsel would not allow him to do so. Clearly, “[i]n all criminal prosecutions[,] the accused shall have a right to be heard by himself or counsel, or both.... ”
 
 Fannings v. State,
 
 997 So.2d 953, 963(¶ 34) (Miss.Ct.App.2008) (citing Miss. Const. art. 3 § 26).
 
 [3]
 
 We note that Young did not raise this issue on direct appeal, and he has provided nothing in the record to indicate that he presented this issue before the trial court or in his post-trial motion. Failure to raise an issue before the trial court creates a procedural bar that prohibits review of the issue on appeal.
 
 Glasper v. State,
 
 914 So.2d 708, 721(¶ 30) (Miss.2005) (citing
 
 Smith v. State,
 
 729 So.2d 1191, 1201(¶38) (Miss.1998)). Furthermore, Young has not provided this Court with a copy of the trial transcript, from which we may discern whether Young was advised of his right to testify and/or whether he waived such right. Young has presented nothing more than a cursory accusation that his trial counsel
 
 refused
 
 to put him on the witness stand, in disregard of Young’s desire to testify. This allegation lacks merit.
 

 ¶ 9. Young further alleges that his trial counsel failed to offer forensic evi
 
 *1156
 
 dence associated with the victim’s blood, and he claims that the failure to offer such evidence “allowed the jury to maintain the
 
 incomct impression
 
 that the blood-splatter pattern on [Young’s] slacks arose from the murder victim
 
 during the course
 
 of the murder.” (Emphasis added). Young avers to this Court that a “blood-splatter expert was prepared to testify that Young’s slacks represented a blood splatter consistent with holding a dying victim in [Young’s] arms.” Young claims that this expert opinion would have supported his story that the victim was already stabbed when he went to her room. Apparently, Young’s post-conviction-relief counsel has failed to carefully read the affidavit presented by the crime-scene analyst.
 

 ¶ 10. After stating his name, address, and credentials, the crime scene analyst stated the following:
 

 On or about July 26, 2004;
 
 I was contacted by Brian A. Young to opine on the possibility of having been able to provide expert assistance to his original trial attorney....
 

 As part of my analysis, I have been asked to opine on whether a bloodstain-pattern analyst
 
 would have been able to assist his attorney explain the presence of a drop of blood on his clothing.
 

 The mere presence of blood of a victim on a defendant only indicates that the defendant came into contact with the victim’s blood while the victim was bleeding or had bled.
 
 In this case, there is a question as to whether it was an accidental transfer from a sexual act, a menstrfujating female[] or from a stabbing.
 

 A bloodstain-pattern analyst may have been able to say if the blood on the defendant’s clothing came from a transfer (such as clothing to a blood spot), a cast off drop of blood or from another potential scenario.
 

 In my opinion, the use of a person trained in bloodstain-pattern analysis would definitely have been able to assist in defense case preparation and advising the attorney of questions to ask of prosecution witnesses at trial. I would have expected the defense attorney to have petitioned the court for its own analyst prior to the trial and have that analyst present at court to advise him on the testimony given by the [S]tate. A defense analyst would have been able to structure questions for the trial for the defense attorney and point out additional and follow[-]up questions for the defense attorney to use in questioning the prosecution witness.
 

 (Emphasis added). Curiously, there is no mention of an “accidental transfer [of blood] from a sexual act” within the record presented to this Court, nor does such a scenario appear in the opinion of Young’s appeal. Presumably, Young’s assertion that the blood could have been caused by holding the dying victim in his arms is “another potential scenario” mentioned by the crime-scene analyst in his affidavit. Young claims that the failure of his trial counsel to call his own expert warrants a conclusion that the outcome of the trial would have been different. We disagree.
 

 ¶ 11. It is apparent that this crime-scene analyst was contacted more than four years after Young’s trial, and he did no more than respond to a possible scenario presented by Young. The analyst’s affidavit does not indicate that he “was prepared to testify that the slacks represented a blood splatter consistent with holding a dying victim in [Young’s] arms.” Moreover, when determining a trial strategy, a defense attorney is not required to procure the services of an independent analyst to structure questions or
 
 *1157
 
 offer follow-up questions “for the defense attorney to use when questioning the prosecution witness.” A counselor’s decision whether to call an expert witness is presumptively viewed by this Court as a strategic and tactical decision.
 
 Williams v. State,
 
 937 So.2d 35, 40(¶12) (Miss.App.2006). Young has not shown that his trial counsel’s decision pertaining to the procurement of an independent expert deprived him of a fair trial.
 

 ¶ 12. Young also claims that his trial counsel’s performance included other failures, such as: failure to investigate whether the victim was raped before her death, failure to determine whether any DNA or forensic evidence supported alternative perpetrators, and failure of counsel to object to the State’s crime lab’s forensic findings. As stated, Young has not adequately populated the record with a transcript of the proceeding before the trial court from which this Court can make a determination whether there is any merit to these accusations. As such, Young has presented mere assertions without any sound basis or substance to support his allegations, and mere assertions are insufficient to support his claim of ineffective assistance of counsel.
 
 [4]
 

 ¶ 13. That being said, we note that even a cursory reading of Young’s direct appeal verifies that Young’s trial attorney was exercising discretion and judgment at trial. Young’s trial counsel objected to testimony given by at least one of the investigating police officers, even asking to be heard in the judge’s chambers and making a motion for a mistrial.
 
 Young,
 
 891 So.2d at 819(¶ 15). Young’s attorney objected to numerous jury instructions, and Young’s attorney made a motion for a new trial because the overwhelming weight of the evidence was against the verdict.
 
 Id.
 
 at 819-20 (¶¶ 16-21). On appeal, Young’s attorney argued that: the State’s evidence was weak and circumstantial; there were two other men with motives; and the evidence presented by the State was subject to different interpretations.
 
 Id.
 
 at 821(1122). Young has not overcome the presumption that his trial counsel’s actions were reasonable and competent.
 

 B. Failure to Discuss a Plea Offer
 

 ¶ 14. Young argues that his trial counsel withheld a plea offer from him, wherein he could have plead to a lesser-included offense. In his brief to this Court, Young states that, right before going to trial, his trial attorney made a “game-day exclamation that [Young] [was] going to trial even though a plea [was] offered.” Young states that he would have accepted a plea offer, even though he maintains his innocence. Be that as it may, Young’s allegation has not gone unchallenged.
 

 ¶ 15. In response to Young’s complaint, Young’s trial attorney furnished a letter to the Mississippi Bar Association Complaints Committee, which stated that he had no recollection of any plea offer. Young cavalierly states in his brief to this Court that, although his trial attorney “does not recollect any plea offer being made, ... he does not maintain a recollection that one was
 
 not
 
 made.” (Emphasis added). This argument is unpersuasive in that this issue is not dependent upon Young’s trial attorney’s memory alone.
 

 ¶ 16. Young fails to address an affidavit from an assistant district attorney that participated in the prosecution of Young.
 
 *1158
 
 In his letter to the Mississippi Bar Association, Young’s trial attorney stated that he was also attaching an affidavit from one of the assistant district attorneys who had handled Young’s case,
 
 and
 
 he had requested yet another assistant district attorney to check the district attorney’s office’s files to verify whether there had been a plea recommendation offered. Indeed, the record includes an affidavit from Wendy Martin, who stated that “she was an assistant district attorney for Jacks on County from 1998 to 2002[,] and [she] aided in the prosecution of BRIAN YOUNG.” She went on to state that “to the best of [her] recollection ... NO PLEA OFFER was given to ... Young. [And][,] at the time ... Young was prosecuted, it was standard policy[,] if a murder case was strong[,] that no murder case was given a plea offer to any lesser-ineluded offense or for any time less than life.” The record simply does not support Young’s allegations that his attorney failed to tell him of a plea offer. Rather, the record indicates that no plea agreement was offered to Young. Accordingly, this issue is without merit.
 

 C. Failure to Address a Third-Party Confession Letter
 

 ¶ 17. Young states that in September 2000, his trial counsel received a confession letter from the victim’s husband. He asserts that this “pivotal piece of evidence was immediately turned over to the police investigators,” but the letter was never examined by a laboratory. He argues that his trial counsel was ineffective by not objecting to the State’s explanation as to why the letter was not sent to a laboratory for examination, by not seeking an independent examination of the letter, and by never raising the issue of examination of the letter on appeal. Again, there is nothing in the record wherein we may ascertain what Young’s trial counsel’s reasons, thoughts, or decisions may have been pertaining to the “confession letter,” other than Young’s assertion of error.
 

 ¶ 18. Nevertheless, in his brief to this Court, Young details that “one of the principal detectives” explained at trial that the letter was not sent to a laboratory for examination because the State believed too many people had touched the letter. The supreme court has found that testimony regarding the impossibility of removing latent fingerprints from certain materials introduced into evidence does not constitute error.
 
 Bullock v. State,
 
 391 So.2d 601, 610-11 (Miss.1980). In other words, it was not improper for the State to testify that fingerprints cannot be taken from all evidence. Recognizing this truth, we find that Young’s trial attorney’s decision not to seek independent examination of the letter or object to the detective’s testimony does not constitute ineffective assistance of counsel.
 
 [5]
 
 As such, this issue is without merit.
 

 D. Failure to Pursue Speedy-Trial Claim
 

 ¶ 19. Young argues that he filed a motion for a speedy trial on July 24, 2001, and a hearing was held to address his motions concerning a speedy trial, discovery, and bond. However, he claims the trial court did not rule on the motion to dismiss for a speedy-trial violation. Young asserts that his trial counsel did not address such inaction, and that his trial counsel just “let it go.” He argues that his trial attorney’s actions related to his motion for a speedy
 
 *1159
 
 trial fell “below what is reasonably expected of defense attorneys.” This historical account is not completely accurate. We look to Young’s direct appeal in an attempt to discern what transpired before and during Young’s trial, given that the record includes no documents pertaining to Young’s motions to dismiss or for a speedy trial. The supreme court set forth the following:
 

 Young was arrested on July 5, 2000. Charged with capital murder, he remained in jail, without bail. No mention is made in the record or the briefs that he made any attempt to obtain release, or to request a speedy trial during that time. In
 
 June 2001
 
 Young filed a motion for bail, a petition for writ of habeas corpus and
 
 a motion to dismiss the charge for denial of his right to a speedy trial.
 
 On or about July 1, 2001, at the hearing on these motions, the State announced Young’s indictment. Young’s motions were then deferred by his attorney, pending a review of the indictment. Young did not pursue these motions to a ruling by the trial court. Instead, defense counsel asked the trial court for a recess so that the State could file the indictment. Young’s indictment was filed on July 6, 2001.
 

 On
 
 July 2U, 2001,
 
 Young filed
 
 a motion for discovery and demand for a speedy trial, followed by an amended motion to dismiss the charge.
 
 It is unclear from the record whether a hearing was held on these motions, but, on August 19, 2001,
 
 the trial judge
 
 set bond upon the reduced charge of murder and, according to Young’s brief,
 
 denied the motion to dismiss.
 
 However, the trial court failed to enter an order on the original motion to dismiss or the amended motion to dismiss the charge. Young’s trial commenced on April 2, 2002, nine months after his indictment.
 

 Young,
 
 891 So.2d at 817 (¶¶ 6-7) (emphasis added).
 

 ¶ 20. It is evident from Young’s direct appeal, his trial attorney made two motions to dismiss the charge because of a speedy-trial violation in June and July 2001, and the trial judge did rule on his motion to dismiss. Also, the supreme court, when evaluating Young’s speedy-trial-violation claim, stated that “[tjhere was nothing in the record or in his brief to indicate that Young
 
 made any effort to request an attorney,
 
 seek bailf,] or demand a speedy trial prior to June 2001.”
 
 Id.
 
 at 818(¶ 13) (emphasis added). Likewise, there is nothing in the record in the instant case to determine when the attorney at issue became Young’s attorney or to determine how long he waited before seeking relief for a speedy-trial violation. Furthermore, there is nothing in the record that indicates Young’s trial attorney just “let [the matter] go.” In any event, the supreme court addressed Young’s speedy-trial-violation claim under the
 
 Barker
 
 factors and determined that he did not suffer prejudice from either his pre-indictment incarceration or the post-indictment period before trial, when he was released on bond.
 

 ¶ 21. Young also argues that his trial counsel failed to adequately populate the record on appeal. He relies on the opinion set forth by the supreme court in his direct appeal. When addressing Young’s speedy-trial-violation claim on appeal, the supreme court found that there was nothing in the record to indicate prejudice to Young by his post-indictment delay and stated “[o]ur law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved.”
 
 Young,
 
 891 So.2d at 819(¶ 14). The supreme court stated that
 
 *1160
 
 Young did not provide evidence that the State had delayed bringing Young to trial for any improper or prejudicial reason, and the only claim presented by Young was that he was incarcerated nearly 400 days; the supreme court found that this was insufficient to prove prejudice under the
 
 Barker
 
 factors.
 
 Id.
 
 This is insufficient to merit a finding of ineffective assistance of counsel.
 

 ¶ 22. Young has not shown how the outcome of his trial would have been different based upon a record that might or might not have been fully populated by his trial counsel or what might or could have been included in the record by his trial counsel. He merely asserts that his trial counsel “failed to establish a record for appeal.” This assertion does not overcome the presumption that his trial counsel acted reasonably. If “counsel is reasonably effective in the defense of an accused, he meets constitutional standards, irrespective of the client’s evaluation of his performance.”
 
 Brooks v. State,
 
 573 So.2d 1350, 1353 (Miss.1990). A defendant is not entitled to expert or errorless counsel, but only to reasonably effective assistance of counsel.
 
 Id.
 
 (citation omitted). This issue is without merit.
 

 III. DENIAL OF AN EVIDENTIA-RY HEARING
 

 ¶ 23. In his final issue, Young asserts that the trial court erred in denying his request for an evidentiary hearing prior to denying his motion for post-conviction relief. “This Court has determined that leave to proceed in the trial court does not automatically grant the petitioner a hearing.”
 
 Townsend v. State,
 
 892 So.2d 282, 284(115) (Miss.Ct.App.2004) (citing
 
 Sanders v. State,
 
 846 So.2d 230, 235(¶ 15) (Miss.Ct. App.2002)). “Once under the jurisdiction of the trial court, pursuant to Mississippi Code Annotated section 99-39-19(1) (Rev.2000), that court [has] the authority to render an opinion
 
 mth or without an evi-dentiary heating.” Id.
 
 (emphasis added). Based upon a thorough review of the record and pursuant to the authority of Mississippi Code Annotated section 99-39-19(1) (Rev.2007) and
 
 Townsend,
 
 we determine that the trial court did not err in denying Young’s motion for post-conviction relief after finding that his claims lacked merit. Accordingly, we affirm the trial court’s denial of Young’s motion for post-conviction relief.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Mississippi Code Annotated section 99-39-21(3) states that: "The doctrine of res judica-ta shall apply to all issues, both factual and legal, decided at trial and on direct appeal.”
 

 [2]
 

 . We are unable to determine the affiant’s name from the signature on the affidavit.
 

 [3]
 

 . Article 3 Section 26 of the Mississippi Constitution of 1890 states in part:
 

 In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; and he shall not be compelled to give evidence against himself....
 

 [4]
 

 . "When an appeal involves post-conviction relief, the Mississippi Supreme Court has held, 'that where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit.' ”
 
 Williams v. State,
 
 752 So.2d 477, 479(¶ 5) (Miss.Ct.App.1999) (citing
 
 Lindsay v. State,
 
 720 So.2d 182, 184(¶ 6) (Miss.1998)).
 

 [5]
 

 . We give Young the benefit of the doubt that his trial attorney did not object to the testimony. However, given that Young has not populated the record with a copy of the trial transcript, it is not certain that Young’s trial attorney did not raise an objection to any testimony related to the "confession letter.”