MAXWELL, J.,
for the Court:
¶ 1. A Jackson County jury found Frank Demetrius Patton guilty of murdering his wife. He appeals arguing the jury’s rejection of his insanity defense preponderates against the weight of the evidence. Viewing the evidence in the light most favorable to the verdict, we find the State’s theory that Patton could distinguish right from wrong when he shot his wife is supported by expert testimony and reasonable inferences drawn from the circumstances surrounding her death. We affirm.
FACTS
¶ 2. In the early-morning hours of February 23, 2008, Patton called 911 claiming his wife, Remicka, had shot him. Police arrived on the scene to find Patton’s wife dead from a gunshot wound to her head. They discovered a loaded .380-caliber pistol next to her body. Investigators also encountered Patton, who had been shot in the chest. Because the path of the bullet did not pierce any vital organs, Patton was able to be interviewed shortly after the incident. Patton waived his Miranda rights and agreed to speak to Detective Jeff Smith of the Moss Point Police Department.
¶ 3. Patton claimed he heard two gunshots. He initially maintained that he was hit by the first of the shots but did not know who had shot him. Later in the interview, he claimed he thought his wife had shot him, though he could not explain why she would have done so. At another point he told Detective Smith, “I think she shot herself.” Patton admitted he and Remicka had discussed divorce the week before her death, and Patton thought she might leave him.
¶ 4. Dr. Paul McGarry, a forensic pathologist, testified Remicka sustained a “tight contact wound.” Dr. McGarry explained that this meant the muzzle of the gun was directly against her head when it discharged, instantly killing her. Dr. McGar-ry did not believe the injury was self-inflicted because the bullet traveled in a downward path from the right-front to the left-back of her skull. He also observed that blood was spattered all over her right arm and hand, which he believed was extended toward the side of her body at the time she was shot. Forensic scientist David Whitehead testified that gunshot-residue samples taken from Remicka were all negative. Gunshot residue was identified on both of Patton’s hands.
¶ 5. Patton pursued an insanity defense. He introduced three family members as character witnesses. These witnesses essentially testified that Patton had a quiet, reserved personality. Patton also put on two experts. Dr. Roy Barnes testified as an expert in psychiatry. He examined Patton on two occasions for about ten minutes each. Dr. Barnes claimed he “felt pretty confident that [Patton’s] diagnosis was Schizoaffective Disorder, which is similar to schizophrenia, but somewhat less severe in nature.” Though Dr. Barnes “felt like [Patton] was being honest,” he expressed no opinion as to Patton’s ability to distinguish right from wrong at the time of the shooting. On cross-examination, Dr. Barnes admitted he had performed no tests on Patton and “didn’t go into detail to determine” if Patton was malingering.
¶ 6. Dr. Stefan Massong testified on Patton’s behalf as an expert in psychology. Patton told Dr. Massong he remembered retrieving his gun and bringing it to the room where his wife was asleep. Patton *588 then recalled he “released the trigger.” According to Dr. Massong, Patton claimed he had experienced a blackout during the incident. Dr. Massong thought Patton’s symptoms indicated he had “disassociation amnesia.” As a result, Dr. Massong did not believe Patton had a Ml awareness of what he was doing, or was capable of premeditation at the time of the shooting.
¶ 7. Dr. Massong’s testimony conflicted with the State’s rebuttal expert, Dr. Criss Lott, a psychologist who had previously interviewed Patton. Dr. Lott testified that Patton had told him he remembered shooting his wife in the head shortly after their discussions about getting a divorce. In explaining why he shot his wife, Patton offered, “I don’t know why I did it. I was just confused. I let everything build up inside of me.” In Dr. Lott’s opinion, to a reasonable degree of psychological certainty, Patton understood the nature and quality, as well as the wrongfulness, of his actions.
¶ 8. The jury found Patton guilty of murder, and the circuit court sentenced him to life imprisonment. On appeal, Patton argues the jury’s rejection of his insanity defense is against the overwhelming weight of the evidence.
STANDARD OF REVIEW
¶ 9. When reviewing a claim based on the weight of the evidence, we evaluate the evidence in the light most favorable to the verdict and “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). We must accept as true all evidence consistent with the defendant’s guilt, along with any reasonable inferences that might be drawn from the evidence. Young v. State, 891 So.2d 818, 821 (¶ 21) (Miss.2005). An appellate court’s authority to grant a new trial based on the weight of the evidence should only “be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18).
DISCUSSION
¶ 10. Mississippi follows the M’Naghten test to determine a criminal defendant’s sanity. To establish the defense:
it must be clearly proved that at the time of committing of the act the accused was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong. More succinctly, the test for insanity is whether the defendant was unable to distinguish right from wrong at the time the act was committed.
Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990) (internal citations and quotations omitted). Once a defendant raises a reasonable doubt as to his sanity, the State then must prove the defendant’s sanity beyond a reasonable doubt. Id.
¶ 11. In making its determination on the defendant’s sanity, “the jury may accept or reject expert and lay testimony.” Id. The Mississippi Supreme Court has held when there is conflicting testimony on the issue of the defendant’s sanity, “a jury’s verdict on [that] issue is essentially conclusive and unreviewable.” Crawford v. State, 787 So.2d 1236, 1243 (¶ 29) (Miss.2001). The supreme court has further explained: “[institutional and practical considerations mandate that in insanity defense cases, perhaps more than any other, a jury’s verdict ought to be given great respect and deference.” Id.
*589 ¶ 12. Here, we are faced with conflicting expert testimony. Though Dr. Barnes believed Patton had a mental disorder, he did not testify as to Patton’s M’Naghten sanity. Dr. Massong determined Patton was disassociated from his own actions during the shooting or experienced a blackout, but Dr. Lott adamantly disagreed with this assessment. Dr. Lott did not find Patton suffered from any severe mental illness at the time of the shooting. Nor did he think Patton experienced hallucinations or a loss of consciousness during the shooting. It was the jury’s responsibility to resolve this conflict. See Crawford, 787 So.2d at 1243 (¶ 29).
¶ 13. Further, the jury was free to draw inferences from the circumstances surrounding the killing. Patton’s inconsistent statements to Detective Smith could have been viewed quite negatively by the jury. The alleged marital difficulties and his wife’s mention of divorce in the days leading to the shooting tend to show a possible motive for the shooting. And the physical and medical evidence strongly supports the State’s theory that Patton shot his wife, then intentionally shot himself as some sort of a ruse or effort to conceal his crime. Such attempts of deception have been held to demonstrate guilty knowledge. Tyler v. State, 618 So.2d 1306, 1312 (Miss.1993) (holding the defendant’s false statement that the murder victim was asleep and the defendant’s attempt to hide the murder weapon both demonstrated guilty knowledge).
¶ 14. We find the State presented ample evidence to establish Patton’s sanity at the time of the shooting. Though Patton offered conflicting evidence, it was the jury’s role, not ours, to make witness-credibility determinations and resolve conflicts in the evidence. Therefore, we affirm the circuit court’s judgment.
¶ 15. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR.